Today we have George's first sitting on the panel. I'd like to welcome her to the court. I'm sure she will be having many, many more sittings in the future. So, welcome. Thank you. May I add my second to that? Today we have four cases, two of which are going to be argued. Two have been submitted on the record. For purposes of the record, we will state and identify those two cases. The first one is 06-3185, Miller v. MSPB. The second one is 06-3321, Zellers v. the Air Force. First case up for oral argument is Monster Cable Product v. Quest Group. Mr. Feinberg, you reserve five minutes. Mr. Allen, you reserve two minutes. Thank you. Mr. Feinberg, you may proceed. May it please the court. Ian Feinberg, counsel for plaintiff upon Monster Cable Products Inc. The 416 patent claims a novel way of applying a bias across an insulator in a coaxial cable, this is claim two, by applying bias between the conductive shield, which is the outer conductor, and another line which can be ground. That is exactly what the accused devices do. And AudioQuest, in fact, has heavily promoted this very feature of its products, which it calls the dielectric bias system, or DBS. Mr. Feinberg, I think you're rather familiar with that background. Why don't you move us directly to the issue in the case, which is what is a coaxial cable, sir? So the court granted summary judgment because it construed the claimed coaxial cable as limited to a cable having two and only two conductors. And it did that based on this court's holding a crystal semiconductor construing pattern as being either open or closed. It has to be construed in full context. The district court erroneously construed the claimed coaxial cable as having two in its full context, and here's why. The limitation of the coaxial cable as having two and only two conductors makes it impossible to practice the invention in the way the invention is described in the patent itself. Why is that? Because it leaves out the dielectric. No, Your Honor, it's because the way the claimed bias apparatus works is you have a cable. The cable has within it an insulator. The bias is applied according to column eight. It is applied across the insulator. It's applied between the conductive shield and another line, which can be ground. In fact, in the specification it specifically says that it's applied between the conductive shield and ground. If it's applied between the conductive shield and ground, and it has to be across the insulator, and the conductive shield's on the outside of the cable, it follows that the ground must be inside the cable and has to be part of the coaxial cable. Not only can it have three conductors in order to work, it must have three conductors. Mr. Feinberg, with respect to figure nine, would your argument that all figure nine is a coaxial cable? A coaxial cable and the bias means that is to say the battery. What is it? Is it the coaxial cable? Is it referenced in figure nine? Is it the bias cable apparatus? Well, the arrow to which describes the whole picture as the cable itself, it doesn't identify that it's a bias cable apparatus. Our position, Your Honor, is that it is a schematic or a diagram, and it is not a construction layout or blueprints for building it. Now, one of the ways... Where else other than figure nine would the definition be at least helpful in describing what's in the pattern? Well, it's helpful in a number of ways. There are a number of ways, Your Honor. And let's begin, if we can, with the preamble itself. Remember what the district court did was looked at the fact that the word having was followed by only two conductors in the preamble. Counsel, did she say having was a closed transition and that nothing else could be included in a coaxial cable? Or did she define having as limited to two conductors? So was having closed in the consisting of sense, in her opinion, or was it closed in the sense of only with regard to conductors? I think, Your Honor, it was actually construed as closed in the consisting essentially of that it could have two conductors, and it could have a dielectric that is an insulator, but it couldn't have three conductors. Now, the preamble itself makes a very... The dialectic is not described in the preamble, is it? It is not. It is described in the specification. So does the coaxial cable have to have a dielectric? Well, this coaxial cable does. The specification tells us so. Column 7 says it has to include a dielectric. This coaxial cable has to have a dielectric for this invention to work, because the way it works is it expresses the insulator or dielectric. That's the whole purpose of the invention. That's it, Your Honor. Now, what the preamble tells us is that the voltage-bearing electrical signal is communicated on a coaxial cable. Now, we know from this Court's decision in Newmanshire v. Triton, the case near and dear to my heart since I argued it, that power can't be applied to a circuit without both a source and a return line. That's true of any circuit, including this one. Then the preamble says that the electrical signal is provided by a single line and an approximately constant ground reference voltage.  First, the voltage-bearing electrical signal is communicated on a coaxial cable. And second, that that electrical signal is provided by two lines, the single line and the ground reference voltage. The ground reference voltage, the ground is obviously carried on the ground line. So it follows a fortiora that a coaxial cable has got to have both a conductive shield and the conductor as a district cordial, but also it must have the ground line because the signal line and the ground line together are what communicates the voltage-bearing electrical signal on a coaxial cable. That's what the preamble tells us, that the return line, ground, has to be part of the coaxial cable. We've already talked about the freestanding error of 184. Let's go back to that for a moment. Because in the specifications, there's a reference that specifically says that 184 is a coaxial cable. So is 184 referring to the coaxial cable or is it referring to the apparatus? The coaxial cable. And there's more, Your Honor, that confirms this. The inventor, near the end of the specification, just before the claims, describes two ways his invention might work. He says, one, two possible physics explanations. One, he says, the first explanation is based on the electrostatic effect, which occurs when a voltage is applied across an insulating medium. So he says that you've got to apply the bias across the insulator. In the district court's construction, that's impossible because since she says that the ground reference line can't be part of the coaxial cable, and we know the insulator is inside the coaxial cable, it's simply impossible to do that. Why is it impossible to do it? The claim says a biased cable apparatus, yada, yada, yada, on a coaxial cable having a center conductor and a conductive shield. Your Honor. It doesn't say in. It says on. Yes, but when you get to the specification in column seven, it says that the insulator is part of the coaxial cable. So it is certainly at least one place the insulator can be, is inside the conductive shield and therefore in the coaxial cable. I don't rule out the possibility that maybe you could have a coaxial, I'm sorry, an insulator somewhere else, but there's no description of it anywhere in the specification or otherwise. Counsel, what's a conductive shield? In this case, the conductive shield is the outer shield of the coaxial cable. So where bias is being applied is the positive voltage is being applied to the shield and the ground is on the ground reference line or some other line. When you say in this case, I assume you mean in figure nine, but you don't necessarily mean, I don't think, and maybe I'm wrong, correct me, that the word conductive shield is defined in the spec as limited to one conductor of the kind described or shown in figure nine or that one of skill in the art would understand the term conductive shield to be one and only one conductor. Do you? You could have multiple conductive shields, although there's no description. Not multiple conductive shields. Multiple conductors make up a conductive shield. Think of a barricade. You're about to pelt me with a fruit on my first day on the bench for some question I ask you. I could either hold up a single shield made of one piece of something, a single construction, or I could set up cinder blocks and effectively do the same thing with a multiple component approach. Couldn't a conductive shield, a shield he made of multiple conductors? Perhaps could, Your Honor, but not in this coaxial cable. This coaxial cable has to have three conductors, and we know that the bias is applied between the coaxial cable and the ground reference line, and we know that the insulator, the dielectric, is also inside the cable. Think of it as a sandwich. In this case, a round sandwich or perhaps an arrow sandwich. You've got the middle, which is the insulator, the dielectric, and you've got the bias being applied between the outer conductive shield and another line, which is ground. There's simply no way to do this in a coaxial cable if, as this report held, the coaxial cable can only have two conductors. In your conception, how is the ground inside the dielectric shielded from the central line, the center conductor? Well, the ground is ground, Your Honor, so it doesn't need to be shielded from the conductive shield. It's running at ground. That's from the center conductor. Well, they can't be touching. They can't be touching, but we know there's dielectric. There could be dielectric between the center conductor and the ground as well. Your concept is there is a ground of some sort surrounding or paralleling the center conductor, outside of which is the dielectric, outside of which is the shield. Right, and we know you can build such a cable because that's what the defendants built. And that's the only way that you read the claim. I believe that the claim actually can't be read another way, and you can't build it another way. So in my view, that this report has construed this claimed coaxial cable in a way to make it unbuildable. Do you want to say your vote, then? I would like to add just two points. Point one is that the court also misapplied the doctrine of equivalence. It gets complicated. It's in our briefs. I'll reserve that for rebuttal. That's assuming that, in fact, she was correct that a coaxial cable is limited to two and only two conductors in claim two. Thank you. Mr. Holland? May it please the Court, Chris Holland on behalf of the defendant and cross-appellant, AudioQuest. The statements that were just made by the opponent bear some correction for the record. First of all, the claim themselves, the claim to itself, does not ever mention applying a bias to the dielectric. It, in fact, specifically says that bias voltage has to be applied to the conductive shield. The district court ruled that that was unambiguous, and Monster has not challenged that in her appeal. In addition, I find it odd that we are here today arguing about whether or not a dielectric is necessary to be included in a coaxial cable because we proffered a construction that actually included a dielectric between the center conductor and the conductive shield, which is what we thought was disclosed by the patent. And Monster objected to that and successfully argued to the district court that the dielectric should not be included in the cable. It's only now, after they've lost it, that they're saying, no, no, no, we can't have an operable functional coaxial cable without that dielectric inside of it. So I find that quite odd. Well, can you have a coaxial cable without the dielectric inside of it? I don't think you can, Your Honor, but the point that he's raising, or that Monster is raising it for, is that they're trying to say because the dielectric wasn't included, that means, de facto, there must be another conductor. But they're skipping over the fact that the dielectric is itself an insulator. It's not a conductor. So whether it's included or not included, it doesn't save them from the fact that a coaxial cable, for decades before this patent was filed, and ever since it was filed, has always been understood within the art to include two and only two conductors. Oh, counsel, come on. You go home, you've got a TV, and you have a cable, and you splice open that wire, and you think there's only two conductors in there? Right now? Your Honor, yes, in terms of the way those conductors are operating, yes, that's in fact the case because those braids of wires that the court is referring to are, in fact, in electrical communication. And when they're in electrical communication, they operate as a single conductor. No, they operate as a single conductor, but they're not a single conductor. They're multiple conductors operating together, right? Actually, no, they're not. They're actually, because of the way they're wound together, they are actually transmitting the signal on themselves as a single conductor, as the court found in the underlying case. The district court ruled that anything in electrical communication will have to perform as a single conductor, and Monster, again, did not disagree with that. And that's actually, if we look at, for example, the IEEE diagram that they cited, where they try and make the same exact point, Your Honor, they try and say these are all separate conductors that are all operating independently of one another. That couldn't be farther from the truth. If one looks at the text of the IEEE definition, it very clearly talks about a single inner conductor, which those woven strands are, and a single outer conductor, and that's the whole point of the electrical communication. Isn't this just like a bunch of resistors in series, okay? You can say they're one big resistance, if you just say they're in series, because resistors in series, you add them together, and they give you a certain amount of resistance, or you could say it's four separate resistors in series. Isn't it the same with the conductor versus the braided or the stranded lines? Actually, it's not, Your Honor, and I'm glad you gave it an example, because the reason it doesn't work to say resistors versus the conductor is precisely because not only the conduction that's occurring because of the electrical communication, but because of the very specific term coaxial cable we're talking about here. There are an abundance of sites within the brief about the intrinsic evidence all saying the conductive shield, the inner conductor, the center conductor, and when the patentee said that, the reason he had to say that is because there is no evidence that at any point in time in the history of electronics, anyone has ever taken a conductive cable that has more than two conductors and called it a coaxial cable. What did they call it then? In fact, I was going to say the best they could come up with was if you add an extra shield on the outside, and they said that's a species of coaxial cable because of the illustrative encyclopedic dictionary they cited. The problem with that is that further definition that they want to exclude says that's actually a triaxial cable, and that's my point is that upon adding a single extra conductor to a coaxial cable, the industry and people of steel and art cease to call it a coaxial cable, and they begin to call it a triaxial cable. Is that an evidence in this case that where there are people of ordinary skill in the art that talked about the plain meaning of the word coaxial to one of skill in the art? There's an abundance of evidence in case you're wondering in terms of what coaxial means, yes, and what I'm actually arguing is that there's a void of evidence ever proffered by Monster that anyone has ever called a multiple conductor cable with anything more than two conductors in it coaxial. Did you have expert testimony on the point or any other extrinsic evidence that the court utilized to construe the word coaxial as delimited to two? Yes, the court looked first at the claims, then at the intrinsic evidence, including the spec and the file history, as the court, even though they were pre-Phillips, she presciently went through the Phillips steps and then looked at all the dictionaries that had been cited and stated in her holding that the multitude of dictionaries all confirmed what we were saying, that coaxial, in fact, involves two conductors and only two conductors, and that the only dictionary before the court that had anything reference to anything else was the Penguin Electronics Dictionary that Monster cited, and she found that to be outside of what was disclosed by the patentee. It's curious that in her decision dealing with the infringement issue, she talks at length about the expert testimony as it reflects on the question of what is a coaxial table, but in her claim construction, she didn't use or at least didn't refer to any extrinsic evidence or expert testimony. In fact, she made it clear she was keeping herself within the compliance of the intrinsic evidence. Did she have before her the expert testimony at the time she did the claim construction, or what was the sequence? Was she just trying to dodge the bullet that we used to fire if she went outside for claim construction, or did she actually have expert testimony when she did her claim construction? The answer, Your Honor, is yes, she had expert testimony in front of her at the claim construction hearing. It was couched in terms of competing tutorials, one by Monster's expert and one by our expert. And at the end of the day, she did in fact just discount both sides' presentations. She thought them helpful, but she ended up not relying upon them in her ruling. At least not in her ruling. Yes, sir. And what I was referring to in response to Your Honor's question was that in the summary judgment phase there was further expert testimony introduced by Monster. We did not introduce further expert testimony. We simply relied on the intrinsic record as well as the file history. Mr. Holland, hypothetically, if you had three cables, A, B, and C, could you reduce distortion by recognizing A and B? I'm sorry, sir. Three cables and three conductors. Three conductors. Okay. Hypothetically, I think one could, depending upon how one were to construct the particular distortion reducing apparatus, Your Honor. Certainly, I think there's an abundance of ways to do it. Our client is reflecting the record. It has its own patent application. It's going to go forward with our particular way of reducing distortion. But it would reduce it. Absolutely. It can be done. And again, not to belittle the point, but the unfortunate point for Monster here is that this patentee didn't ever disclose to the public or to anyone else how to do it without doing it in this particular two-conductor setting. And that's actually a point that I'd like to address for a moment. One of the things they never address anymore in their brief, and it hasn't been brought up here in an oral argument, is the fact that when this patentee wanted to claim his invention as applicable to any sort of cable whatsoever, he did so. He did it in claim one, the very first claim he drafted. He didn't include the term coaxial. He simply said, this type of construction can be applied everywhere. And when you insert the term coaxial, because of the longstanding use of it within this industry, it has a very specific meaning. And I find it very analogous to what the holding, I'm sorry, did you have a question? I want to interrupt you. That's fine. I find it very analogous to the holding last year in Phillips, frankly. As the court focused on the term baffles in Phillips, we'd be looking at cables. But in Phillips, the court said unambiguously, steel baffles, we all know what steel is. And that's the problem with this industry. Everybody knows what a coaxial cable is. When you take the word coaxial out and just say cable, then you're opening yourself up to other constructions. We heard from the other, from Mr. Feinberg, what his conception of this coaxial cable must be, which is a central conductor, some sort of insulator around it, protecting it from the ground conductor, a dielectric around that, and then an outside shield of some kind. And that's the way he gets a biased cable apparatus on top of a coaxial, on a coaxial cable, how we said it in reference to the inductive shield. What do you picture? What is the image in your mind of what this claimed cable looks like, claimed to? Well, oddly enough, the image in my mind, Your Honor, is exactly what's shown in Figure 9. And I disagree with Mr. Feinberg and Monster's construction of Figure 9. Let me go back. You explained it to me. Well, specifically, the description in Column 7 of the patent that discusses how the Figure 9 is constructed for persons of skill and power to understand it, shows very clearly that the ground reference line is, in fact, external to the coaxial cable. External to the shield. External to the entire cable. External to the entire cable. That's right. And just as the voltage source is external to the cable, and just as the single line that is supplying the voltage-varying electrical signal is external. When your company puts these bias, what do you call them, DBAs? DBS. DBS. Is that inside your cable or external to your cable? Sometimes internal, sometimes external. What Monster is doing is talking about, the reason they want that grounding in there is because in our cables, we frequently ground the center conductor. And as we all know, if the center conductor is grounded, then it can't be transmitting any voltage-varying electrical signal. So that's going to cause some other kind of construction problems. So what they've done effectively is trying to say, look, we want to parse out for this part of the case exactly how we like it. So you ground your center conductor in some of your cables, and then do the varying voltage in other conductors inserted into the cable. Well, actually, most often in our cables, your honor, the voltage-varying signal is actually split and phased out between a number of different cables. For example, the 1920-level conductors that we have in our cables often carry various parts of the signal, because our clients found that that provides a more clear reference point. That creates yet another ground on which this core can uphold. So here's a website. You can find it in the back there. Pieces of it have been made part of the record, including all of the diagrams and disclosures that are part of the Harley Declaration. I believe that's a 1612 for 1700. Counsel, you made reference to claim number one. It was, I think, making a pseudo-Clinton differentiation type argument, showing a difference between one and two. Claim one, I want to hear your thoughts on this, also says having a first conductor and a second conductor. And if we were to distinguish claim one and claim two after having, they clearly, in claim one, articulated two and only two conductors. And they did so by nomenclature first and second. There is no similar sort of limitation in claim two that I can see. What are your thoughts on that? My thoughts are because, Your Honor, of the, going back to what I talked about with Your Honor earlier, because of the specific construction of a coaxial cable for many decades, the center conductor is generally right in the center. And there's a cylindrical outer conductor that runs along the length of it. Therefore, calling it center and outer conductive shield, especially given the parlance of coaxial cable, was appropriate. The other, to further flesh out where I think Your Honor is going is, how could you draft it more broadly from that T? What they should have done, very simply, is put in something like, at least one inner conductor, at least one center conductor, at least one outer conductive shield. That's a very simple phrase that this court's been through many times. And they didn't do so. Can a coaxial cable have multiple shields? Can a coaxial cable have multiple shields? If it does, as I was mentioning, Your Honor, I'm into my rebuttal time. If it's all right, the court's permission, I'll just go ahead and use it now and respond if that's all right. Yet the answer is, if the single dictionary they cite, the one that says a triaxial cable, is a coaxial cable with an external, extra shield on the outside, if that's to be construed to be a type of coaxial cable, then the answer has to be, implicitly, yes. But my response is, the problem with that, and I disagree that that's still a coaxial cable, because that very definition, as I said earlier, ceases to call it a coaxial cable, and in fact says it's a triaxial cable. Doesn't it want to say a subset of coaxial cables? But the problem is, Your Honor, in terms of the public notice and public disclosure problem, that what we're looking at is, that's an argument that they come up with, yes, absolutely. So I have to say that they put that argument in. I disagree with it strongly, because no engineer, no person of skill in the art ever would say, when I want a triaxial cable, or I want a 19-conductor cable, or I want a multi-conductor cable, I'm just going to write coaxial, and hope that someone can figure out they're supposed to use this multi-conductor, complex geometry that Michael has. Since you're into your rebuttal time, perhaps your presiding judge would grant me an opportunity to ask one more question. Go ahead. On your cross-appeal. Yes, sir. A very experienced and highly educated trial judge used 24 pages of closely reasoned language to come up with a claim construction, and 31 pages to deal with the basic issues in the case of Kringle. Isn't it rather frivolous on your part to accuse Monster of being frivolous, to have brought this suit in the first place, with all of these difficult issues in it? Your Honor, I don't believe it was frivolous. Given the status of the record, and especially the stance that they took during discovery, when they said expressly, they actually moved to preclude our evidence on the fact that they said, we can't tell from the website and the charts that are up there, how these cables operate. And right away, I went to myself, well, wait a second. That's what you were relying on to bring the case in the first place. How can you do that? Make me defend the motion, come in and say that I've defended additional cables that you say you simply looked at one instead of every cable that was out there available. And now you're going to go to the next step and say, I can't even tell from the publicly available information whether there's infringement or not. Well, didn't they have attorney opinions suggesting from the website and looking at your literature that there was a problem? They had that. And apparently, I've never seen those, because those were submitted on camera. The cable that you all offered to settle, which is interesting that that's in the record, but it's apparently in the record. With respect to the opinion answer, apparently those were entered. I've never seen them. The answer, as I understand it, based on the judge's ruling, is that those were directed towards a single cable. We have been defending over two dozen different cable constructions. And a number of those were never addressed in that opinion or either of those opinions, in my understanding. With respect to the settlement offer, I agree that that should never have been part of the record. I've objected to it. But at the same time, I don't think it's indicative of anything other than my client simply saying, we don't want to fight for asylum out to DC. We don't want to continue with this. We'd like to move on rather than continue fighting for that. That's all. It would cost him a half a million dollars in attorney's fees. Yes, Your Honor. Exactly. Thank you, Mr. Holland. Thank you. Thank you, sir. I need to write a whole bunch of statements in the record. First, he may have objected to the use of a settlement offer to show that the case was not frivolous. But in fact, they put the settlement offer in. We didn't. And they withdrew their objection. When we confronted them with the fact that they, not us, put their settlement offer to them. Second of all, there's a misstatement on dictionaries. The district court found that there were dictionaries that used the term coaxial to be more than two. And in fact, the district court said that the dictionaries that limited it to only two were in a different field of art. IEEE does not deal with audio cables. And they have nothing to do with audio cables. There was, in fact, a- Counsel, let me ask you the same question I asked the previous counsel, which is when you have multiple conductors in a braided or stranded fashion. Well, I keep calling them multiple conductors. But Counsel for the Appellee suggested that that wasn't accurate. That they're all just a single conductor with a bunch of lines. Do you agree with that? Are those multiple conductors? Or are those a single conductor made up of multiple strands? So I would say it's in between. They're multiple conductors, but they're acting as one. So you can send the same signal through multiple conductors. But that's not what's going on here. And I think it's interesting that this court brought up claim one. Claim one is actually a two-conductor claim. It's a way for applying bias on a conventional two-conductor cable. And how does it do it? It's running bias between the two conductors, between the voltage-bearing signal and the return path. And how it does that, it's a way for biasing an existing cable. But claim one refers only to a cable, whereas claim two, your inventor specifically says a coaxial cable having a center conductor. Can you help me understand, why did the inventor specify using a coaxial cable having those two elements? Well, he specified those two elements, and he specified, your honor, that it also had to have a return path. And the preamble, which- You're not answering my question. My question is, why did he specify a coaxial cable? Because he was imagining a cable that's not a flat-leaf cable that's round and has the conductors going around an axis of symmetry, which the district court found all of the accused cables have. The district court said the only thing that was different about the accused cables and the claim is that the accused cables had more than two conductors, and more than two conductors couldn't be a coaxial cable. And I come back to what I said before. Our expert, by the way, there was expert testimony, contrary to what Mr. Holland said, on the question of whether a coaxial cable could have more than two conductors. There was only expert testimony from one expert. Ours. Dr. Blesser. But there was expert testimony on that question. There was. And the only expert testimony there was is it could be more than two conductors. They didn't offer any expert testimony. Mr. Vineberg, I noted in claim two, there's no specificity with regard to dielectric. Correct. When does that come in? Well, that comes in when you read the specification and you read the description. The whole purpose of this invention is to suppress the dielectric. By the way, one more thing. But there is no definition of dielectric within that claim. There isn't in the claim. Maybe through coaxial cable? Yes, and there is in the description in column seven. But there isn't a description that there is no claim to dielectric except possibly through the coaxial cable. Is that correct? That's true. That's true. One last correction. There is no accused cable that is running its ground external to the coaxial cable. The question was asked of Mr. Holland, do they have ground external to the cable? There is not a single coaxial device that has ground running external to the cable. That's a difference. Thank you. Thank you.  Thank you.